S:\Plans\Ch11\Johnston.Rhodes.liquidating Plan

GENOVA, MALIN & TRIER, LLP
Attorneys for the Debtor
Hampton Business Center
1136 Route 9
Wappingers Falls, New York  12590
(845) 298-1600
Andrea B. Malin, Esq. (AM4424)
Michelle L. Trier, Esq. (MT1212)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
-----------------------------------------------------------X
In re:

JOHNSTON & RHODES BLUESTONE CO.,    CHAPTER 11
                                                                                CASE NO. 24-35235 (KYP)

                    Debtor.
-----------------------------------------------------------X

**PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

        JOHNSTON & RHODES BLUESTONE CO., the above-named debtor ("debtor") proposes the following Plan of Liquidation (the "Plan") pursuant to Chapter 11 of the Bankruptcy Code:

## ARTICLE I

### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

**A. Rules of Interpretation, Computation of Time and Governing Law**

      1. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neutral gender, shall include the masculine, feminine and the neutral gender; (b) any reference in the Plan to a contract, instrument, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; and (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been o may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to sections, Articles and Exhibits are references to sections, Articles and Exhibits of or to the Plan; (e) the words herein and hereto refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and

sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**B. Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1. "Administrative Claim" shall mean a claim for any cost or expense of administration with priority under section 503(b) or 507(a)(1) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code, including Professional Fee Claims; and (c) all fees and charges assessed against the Estate under 28 U.S.C. sections 1911 through 1930.

2. "Allowed Claim" shall mean a Claim or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the Consummation Date or the expiration of such other applicable period of limitation as may be fixed by the Bankruptcy Code, the Bankruptcy Rules, the Court, or the Plan, (b) as to which any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, (c) that has been allowed by a Final Order, (d) as to which the liability of the Debtor and the amount thereof are determined by final order of a court of competent jurisdiction other than the Court, or (e) that is expressly allowed in a liquidated amount in the Plan, *provided however,* that with respect to an Administrative Claim, that nothing herein shall be deemed to require holders of Administrative Claims incurred by the Debtor in the ordinary course of business, including the actual, necessary costs and expenses of operating the business of the Debtor, to make a request for payment of such Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code.

3. "Assets" means any and all real or personal property of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in progress, accounts, chattel paper, inventory, intellectual property rights and any other general intangibles of the Debtor or Liquidating Debtor, as the case may be, of any nature whatsoever, including, without limitation, all property of the Estate.

4. "Bankruptcy Code" shall mean Title 11, United States Code (Title I of the

Bankruptcy Reform Act of 1978, Publ. 95-598, 92 Stat. 2549, as amended).

5. "Bankruptcy Court" or "Court" shall mean the United States Bankruptcy Court for the Southern District of New York or such other court, as may have jurisdiction over the Chapter 11 case.

6. "Bankruptcy Rules" shall mean, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Court, as applicable to this Chapter 11 case or proceedings therein, as the case may be.

7. "Bar Date(s)" shall mean the date(s), if any, designated by the Court as the last dates for filing proofs of Claims against the Debtor. Said date was fixed as May 24, 2024.

8. "Business Day" shall mean any day other than a Saturday, Sunday, or legal holiday as defined in Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

9. "Cash" shall mean legal tender of the United States or equivalents thereof.

10. " Claim" shall mean a claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code, to wit: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11. "Class" shall mean a category of holders of claims as set forth in Article II of this Plan.

12. "Confirmation" shall mean entry of an Order of the Court confirming this Plan.

13. "Confirmation Date" shall mean the date upon which the Court enters the Confirmation Order.

14. "Confirmation Order" shall mean the Order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

15. "Consummation Date" means the occurrence of the Initial Distribution Date.

16. "Creditor" means any holder of a Claim.

17. "Debtor" shall mean JOHNSTON & RHODES BLUESTONE CO., as debtor-in-possession, prior to the Confirmation Date.

18. "Disclosure Statement" shall mean the written disclosure statement that relates to the Plan, dated December 23, 2024, as may be amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with Sections 1125 and 1126(b) of the United States Bankruptcy Code and Fed. R. Bankr. P. 3018.

19. "Disputed Claim" shall mean (a) any claim or portion of a claim (other than an Allowed Claim), which has been filed pursuant to Section 501(a) of the Bankruptcy Code as unliquidated or contingent, or (b) a claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code as to which an objection to the allowance thereof has been interposed within the time limitation fixed by the Bankruptcy Code, by an order of the Court, or by this Plan, which objection has not been determined in whole or in part, by a Final Order.

20. "Distribution" means the Cash or Assets to be distributed to holders of Allowed Claims under Article II of the Plan.

21. "Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution Date and the Final Distribution Date.

22. "Effective Date" means the date selected by the Debtor which is a Business Day no later than thirty (30) days after the Confirmation Date on which no stay of the Confirmation Order is in effect.

23. "Entity" shall have the meaning provided by Section 101(15) of the Bankruptcy Code.

24. "Estate" shall mean the estate of Debtor created in the Reorganization Case by Section 541 of the Bankruptcy Code.

25. "Final Order" shall mean an order of judgment of the Court which has not been reversed, stayed, modified or amended and as to which the time to seek re-argument, appeal or seek certiorari or review has expired and as to which no appeal or petition for certiorari or review is pending or as to which any right to appeal or to seek certiorari or review has been waived.

26. "Impaired" shall mean, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

27. " Insiders" shall have the meaning provided by Section 101(31) of the Bankruptcy Code.

28. "Lien" shall have the meaning provided by Section 101(37) of the Bankruptcy Code.

29. "Liquidating Debtor" means the Debtor and the Debtor in Possession, or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date.

4

30. "Petition Date" means March 7, 2024, the date on which the Debtor filed its petition for relief commencing the Chapter 11 case.

31. "Plan" means the Liquidating Plan dated December 23, 2024 and any exhibits thereto and any documents delivered in connection therewith, as the same may, from time to time, be amended by any duly authorized amendment or modification to the extent permitted therein or by the Bankruptcy Code or Federal Rules of Bankruptcy Procedure.

32. "Plan Disbursing Agent" means the Entity designated by the Debtor, to wit: the firm of Genova, Malin & Trier, LLP, to disburse the proceeds from the sale of the Debtor's Assets in accordance with the Debtor's Liquidating Plan.

33. "Priority Claim" shall mean a Claim which qualifies as such under Section 507(a)(3),(4) and (6) of the Bankruptcy Code.

34. "Priority Tax Claim" shall mean a Claim which qualifies as such under Section 507(a)(8) of the Bankruptcy Code.

35. "Professionals" shall mean those persons employed pursuant to an order of the Court in accordance with Sections 327 and 1102 of the Bankruptcy Code and to be compensated for services rendered, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

36. "Professional Fees" shall mean all Allowed Claims for compensation and for reimbursement of expenses under sections 328 and 330 of the Bankruptcy Code.

37. "Schedules" shall mean the schedules of assets and liabilities and the statements of financial affairs, if any, filed in the Bankruptcy Court by the Debtor as such schedules or statements may be amended or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009 or orders of the Bankruptcy Court.

38. "Secured Claim" shall mean (a) a Claim that is secured by a lien on property in which the Estate has an interest, in which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) a Claim Allowed under this Plan as a Secured Claim.

39. "Unimpaired" shall mean not impaired within the meaning of section 1124 of the Bankruptcy Code.

40. "Unsecured Claim" shall mean any Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim or an Interest.

41.     "U.S. Trustee" shall mean the Office of the United States Trustee for Region 2, Southern District of New York.

## ARTICLE II
## CLASSIFICATION OF CLAIMS

**A. Administrative Claims (Class 1)**

Costs and expenses of administration, as defined by the Bankruptcy Code, including, but not necessarily limited to, debtor's counsel and special counsel fees, debtor's accountant fees and reclamation/remediation fees assessed by the New York State Department of Environmental Conservation, shall be paid in full in the amount of the Allowed Claim by the Plan Disbursing Agent, from the proceeds of the sale of the debtor's Assets.  At the present time, it is estimated that administrative expenses will total approximately $246,132.00 and consists of the following:

I.  Genova, Malin & Trier, LLP – attorneys' fees, expenses and disbursements to counsel for the debtor in the approximate total amount of $45,000.00 less the pre-petition retainer received by the firm of $20,000.00;

II.  Lori Bertsch, Esq. – attorneys' fees, expenses and disbursements to special counsel for the debtor in the approximate total amount of $5,000.00;

III.  Cooper Arias LLP –accounting fees and expenses to the accountants for the debtor in the approximate amount of $12,000.00;

IV.  New York State Department of Environmental Conservation - estimated remediation fees for the "Campbell Brook" site = $89,362.00 and estimated reclamation fees for the "Doc Smith" site = $114,770.00;

United States Trustee quarterly fees, if any, shall be paid on the Effective Date of the Plan and shall continue to be paid, pursuant to 28 U.S.C. §1930, until such time as the Chapter 11 case is closed.

**B. Secured Claims (Class 2)**

I.     COUNTY OF DELAWARE – The secured claim of County of Delaware as secured by the debtor's real property located in Delaware County, New York.  According to the Proof of Claim filed by the County of Delaware on August 22, 2024, the total obligation owed for real property and school taxes to the County of Delaware is approximately $147,937.99.  The debtor shall pay the County of Delaware in full at the closing of the sale to Aden.

II.    NEW YORK STATE DEPARTMENT OF TAXATION & FINANCE — The secured claim of New York State Department of Taxation and Finance ("NYS") as secured by substantially all of the debtor's assets, including its real property located in Delaware County, New York.  According to the Second Amended Proof of Claim filed by NYS on December 18, 2024, the total

6

secured portion of NYS's claim is $18,463.34, based upon tax warrants filed in Delaware County. The debtor shall pay NYS its secured claim portion in full at the closing of the sale to Aden.

    III. M&T BANK ("M&T") – The secured claim of M&T as secured by substantially all of the debtor's assets including, but not limited to accounts, inventory, and equipment. As of the Petition Date, the total of the obligation due to M&T was approximately $57,914.16. The debtor proposes to pay M&T's secured claim in full from the proceeds of the sale of its Assets, after confirmation of its Plan of Liquidation.

    IV. JEFF BANK, f/k/a The First National Bank of Jeffersonville ("JEFF BANK") – The secured claim of JEFF BANK as secured by the debtor's accounts receivables and inventory. According to the Proof of Claim filed by JEFF BANK on April 15, 2024, the total obligation due to JEFF BANK as of the Petition Date was $10,670.95. The debtor proposes to pay JEFF BANK's secured claim in full from the proceeds of the sale of its Assets, after confirmation of its Plan of Liquidation.

    V. DELAWARE COUNTY INDUSTRIAL DEVELOPMENT AGENCY (the "IDA") – The secured claims of the IDA, as secured by various pieces of equipment of the debtor and the assets in general of the debtor, as set forth below:

    i. Secured Claim 1 – The obligation owed by the debtor to the IDA secured by a lien on the debtor's personal property: a 973c Cat Track Loader (serial number 3RZ00320) and a 95z Kawasaki Loader (serial number 97c-25019). According to the Proof of Claim filed by the IDA on May 3, 2024, the amount owed on Secured Claim 1 as of the Petition Date was approximately $60,470.96.

    ii. Secured Claim 2 – The obligation owed by the debtor to the IDA secured by a lien on the debtor's personal property: a Cat Model 988B Front Loader (serial number 50W6033) and a 1987 Cat 973 Track Dozer (serial number 8BG440). According to the Proof of Claim filed by the IDA on May 3, 2024, the amount owed on Secured Claim 2 as of the Petition Date was approximately $53,666.74.

    iii. Secured Claim 3 – The obligation owed by the debtor to the IDA secured by a lien on the debtor's tangible and intangible property. According to the Proof of Claim filed by the IDA on May 3, 2024, the amount owed on Secured Claim 3 as of the Petition Date was approximately $103,666.63.

The debtor proposes to pay the three secured claims of the IDA in full from the proceeds of the sale of its Assets, after confirmation of its Plan of Liquidation.

    VI. U.S. SMALL BUSINESS ADMINISTRATION (the "SBA") – The secured claim of the SBA, as secured by all of the assets of the debtor, including, but not limited to accounts, inventory, and equipment. According to the Proof of Claim filed by the SBA on March 28, 2024, the total of the obligation due to the SBA is approximately $547,679.96. The debtor proposes to

pay M&T's secured claim in full from the proceeds of the sale of its Assets, after confirmation of its Plan of Liquidation.

  **Class 2** is not impaired and claimants' votes will not be solicited.

**C. Priority Claims (Class 3)**

  I. INTERNAL REVENUE SERVICE ("IRS") – The claim of IRS filed as an unsecured priority claim for taxes due from the debtor (Claim No. 7 filed on this Court's docket on March 29, 2024). The total priority claim due to IRS as of the Petition Date is $7,552.82, consisting of taxes and interest owed by the debtor. The debtor proposes to pay said claim in full, from the proceeds of the sale of its Assets.

  The general unsecured portion of the IRS's claim (in the amount of $320.28) is included is Class 4 of the debtor's Liquidating Plan herein.

  II. NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE ("NYS") – The claim of NYS filed as an unsecured priority claim for taxes due from the debtor (Amended Claim No. 2 filed on this Court's docket on December 18, 2024). The total priority claim of NYS as of the Petition Date is $449,658.38, consisting of taxes and interest owed by the debtor. The debtor proposes to pay said claim in full, from the proceeds of the sale of its Assets.

  The general unsecured portion of NYS's claim (in the amount of $137,197.37) is included is Class 4 of the debtor's Liquidating Plan herein.

  III. STATE OF NEW JERSEY - DIVISION OF TAXATION ("NEW JERSEY") – The claim of NEW JERSEY filed as an unsecured priority claim for taxes due from the debtor (Claim No. 24 filed on this Court's docket on June 5, 2024). The total priority claim due to NEW JERSEY as of the Petition Date is $8,517.00, consisting of taxes and interest owed by the debtor. The debtor proposes to pay said claim in full, from the proceeds of the sale of its Assets.

  Class 3 is not impaired and the claimants' votes will not be solicited.

**D. Unsecured Claims (Class 4)**

  Allowed claims of all other creditors of the debtor, including pre-petition unsecured creditors, pre-petition secured creditors to the extent that the Court finds the same unsecured in whole or in part in accordance with 11 U.S.C. §506 and the general unsecured claims of IRS and NYS, subject to an allowance of their claims by the Court, will be paid pro rata, to the extent that there are proceeds remaining from the sale of the debtor's Assets. The disbursements shall be made by the Plan Disbursing Agent, after the final closing on the sale of the debtor's Assets. The claims in this class total approximately $438,960.00.

  Class 4 is impaired and claimants' votes will be solicited.

# ARTICLE III

# PLAN DISBURSING AGENT

For purposes of this Liquidating Plan, any and all proceeds generated from the sale of the debtor's Assets, or that the debtor is entitled to receive as a result of this Chapter 11 filing, shall be forwarded to counsel to the debtor, GENOVA, MALIN & TRIER, LLP, and deposited in the escrow account of the firm of GENOVA, MALIN & TRIER, LLP.  GENOVA, MALIN & TRIER, LLP shall act as disbursing agent under the debtor's Liquidating Plan and shall disburse the sums due and owing to creditors as provided for and set forth under said Plan.  The disbursing agent shall disburse funds pursuant to this Liquidating Plan within 30 days of the Effective Date.

# ARTICLE IV
# LEASES / EXECUTORY CONTRACTS

At the time of the filing of the Chapter 11 petition, the debtor was involved in the following executory contracts and/or leases:

**(A)    ASCENTIUM CAPITAL LLC**

   i.   Term: Forty-eight (48) month lease, expires 11/2024
   ii.  Description of Equipment - 2001 Cat 980G Wheel Loader; S/N 2KR04256
   iii. Monthly payments of $895.11
   iv.  CURE AMOUNT = $10,741.32 (monthly payments July, 2023 through July, 2024).
   v.   Approximate total balance due on lease = $14,321.76 (including cure amount)

**(B)    WELLS FARGO BANK, N.A.**

   i.   Description of Equipment - two (2) forklifts Model #s FG25T-16; Serial #s A412380 and A411446
   ii.  Monthly payments of $723.02
   iii. CURE AMOUNT = $14,171.16 (3/1/2023 - 7/2024)
   iv.  Remaining balance on lease = $14,171.16

**(C)    WELLS FARGO BANK, N.A.**

   i.   Term: Expired pre-petition
   ii.  Description: Copier/printer
   iii. CURE/PAYOFF AMOUNT = $1,171.80 (lease buyout amount due)

**(D)    F.N.B. EQUIPMENT FINANCE (Claim No. 17)**

  i.    Term: Expires August, 2024
  ii.   Description of Equipment: Saw line – (1) parallel cut stone 44" x 10' cut off saw, Serial number: 2018090-A; (1) cross cut stone 44" x 10' cut of saw, Serial number: 2018090-B; (1) extension table 10' x 44" with solid axle rollers; (1) extension table 5' x 44" with solid axle rollers; and (1) extension table 6' x 44" with solid axle rollers.
  iii.  Monthly payments of $1,138.29; Purchase option $1.00
  iv.   CURE AMOUNT = $2,284.22
  v.    Remaining balance on lease = $14,805.41

**(E)    F.N.B. EQUIPMENT FINANCE (Claim No. 18)**

  i.    Term: Expires August, 2024
  ii.   Description of Equipment: 2012 Hyundai Robex 320LC-9 Excavator; Serial Number: HZ901CC0000257
  iii.  Monthly payments of $3,511.72; Purchase option $1.00
  iv.   CURE AMOUNT = $55,302.95
  v.    Remaining balance on lease = $55,302.95

**(F)    F.N.B. EQUIPMENT FINANCE (Claim No. 22)**

  i.    Term: Expired pre-petition
  ii.   Description of Equipment: 2012 Toyota 7FGU35 Lift Truck
  iii.  CURE/PAYOFF AMOUNT = $7,647.92 (lease buyout amount)

**(G)    DONALD & ALICE SCHEETZ**

  i.    Description: Rights to quarry property situated behind the house known as the Elamera Quarry in the town of Masonville, County of Delaware, New York
  ii.   CURE = Subject to procurement of New York State Department of Environmental Conservation permits and possible reclamation of land.

**(H)    DR. W.G. SMITH**

  i.    Description: Rights to quarry property situated between River Road East and the Bear Spring Mountain Road, town of Walton, County of Delaware, New York
  ii.   CURE = Subject to procurement of New York State Department of Environmental Conservation permits and possible reclamation of land.

**(I)   STANLEY SHAFFER**

      i.      Description: Rights to quarry property situated across the road from the house in the town of Colchester, County of Delaware, New York

      ii.     CURE = Subject to procurement of New York State Department of Environmental Conservation permits and possible reclamation of land.

In accordance with the Asset Purchase Agreement (approved by this Court at the hearing held November 19, 2024) between the debtor and Aden, the debtor assigns its rights and responsibilities under the above contracts and leases to Aden, with the express understanding of the parties that the cure amounts due under the equipment leases are not to be provided for under the debtor's Liquidating Plan and Aden reserves its rights not to 'purchase' the equipment from the lessors.

In the event that Aden does not purchase the equipment set forth above in paragraphs (A) through (F), the debtor shall surrender the equipment in full satisfaction of the lessors' respective claims and said claims will not be paid pursuant to the debtor's Chapter 11 Plan of Liquidation. Specifically, claim numbers 17, 18 and 22 (filed by Bank Capital Services, LLC / F.N.B. Equipment Finance) will not receive distribution under the Plan.

## ARTICLE V.
## EFFECT OF CONFIRMATION

**A.   Vesting of Cash and Assets in the Liquidating Debtor**

Except to the extent otherwise provided in the Asset Purchase Agreeement, the Sale Order, the Plan or restricted by prior order of the Bankruptcy Court, on the Effective Date, all Cash and Assets of the Estate shall be transferred to and vest in the Liquidating Debtor free of any Claims, Liens and Equity Interests, to be managed and used for the sole purpose of achieving Consummation and carrying out the Plan and effectuating the Distributions provided for in the Plan. As of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Equity Interests, except as otherwise specifically provided in the Plan. As of the Effective Date, all mortgages, Liens or security interests in any property of the Estate will be released and all the right, title and interest of any Holder of any such mortgages, Liens or security interests shall be canceled, annulled, terminated and become null and void, except as otherwise specifically provided in the Plan.

**B.   Post-Confirmation Directors and Officers; Dissolution of the Debtor**

On the Effective Date, the Plan Disbursing Agent will have the sole responsibility to disburse funds of the Debtor, with the authority to render payments to effectuate the terms of the Plan. The Plan Disbursing Agent has been retained, as counsel to the Debtor, and will seek compensation for its role in the liquidation of the Debtor pursuant to Section 330 of the Bankruptcy Code.

Upon entry of a Final Decree closing this Chapter 11 case, the Debtor shall be deemed dissolved and wound up without any further action required on the part of the Debtor, the shareholders of the Debtor or any other person.

**C.   Authority to Effectuate Plan**

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan shall be deemed authorized and approved without further approval from the Bankruptcy Court. The Liquidating Debtor (through the Plan Disbursing Agent) shall beauthorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan and to effectuate the Distributions provided for thereunder.

## ARTICLE VI.
## IMPLEMENTATION OF THE PLAN

**A.   Funding of the Plan**

The source of funds to achieve Consummation and to carry out the Plan shall be the Cash and Assets of the Debtor, to be sold in accordance with the Asset Purchase Agreement between the Debtor and Aden, approved at the hearing held by this Court on November 19, 2024. The anticipated cash purchase price is $1,900,000.00.

**B.   Payments by Plan Disbursing Agent**

The Plan Disbursing Agent shall file a Notice of Proposed Distribution with this Court, upon its receipt of the balance of cash and proceeds from the closing of the sale to Aden. Distributions necessary to creditors in Classes 1, 2, 3 and 4 shall be made after closing on the sale of the Debtor's Assets and after notice and approval by this Court, except for the payments to Class 2 creditors necessary to clear title of the real property, to wit: County of Delaware and NYS secured tax claim. Upon final disbursement by the Plan Disbursing Agent of all available funds to creditors, counsel for the Debtor shall file a report with the Bankruptcy Court and request the entry of a Final Decree closing the Chapter 11 case.

## ARTICLE VII.

## MODIFICATION OF THE PLAN

The Debtor may propose amendments or modifications of this Plan at any time prior to confirmation, with leave of the Court, upon such notice as the Court shall direct. After confirmation, the Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation in such manner as may be necessary to carry out the purposes and effect of this Plan.

# ARTICLE VIII.
# RETENTION OF JURISDICTION

Notwithstanding Confirmation or the Effective Date having occurred, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court shall have jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purpose of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

1. To allow, disallow, determine, liquidate, classify, estimate or establish the priority or status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

2. To grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan;

3. To resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date to the list of executory contracts and unexpired leases to be rejected;

4. To ensure that Distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan, including ruling on any motion or objection Filed pursuant to the Plan;

5. To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor or its affiliates, directors, employees, agents or professionals that may be pending on the Effective Date;

6. To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

7. To resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Person's or Entity's obligations incurred in connection with the Plan, including, among other things, any avoidance actions or subordination actions under sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code;

8. To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of the Plan, except as otherwise provided herein;

9. To resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained herein and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

10. To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

11. To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement;

12. To enter an order and/or Final Decree concluding the Chapter 11 Case;

13. To consider any modification of the Plan under section 1127 of the Bankruptcy Code and/or modification of the Plan before "substantial consummation" as defined in section 1101(2) of the Bankruptcy Code;

14. To protect the property of the Estate from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of the Plan, or to determine the Debtor's exclusive ownership of claims and Causes of Action retained under the Plan;

15. To hear and determine matters pertaining to abandonment of property of the Estate;

16. To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

17. To interpret and enforce any orders previously entered in the Chapter 11 Case to the extent such orders are not superseded or inconsistent with the Plan;

18. To recover all Assets of the Debtor and property of the Estate, wherever located;

19. To hear and determine matters concerning state, local, and federal taxes in accordance with sections 345, 505, and 1146 of the Bankruptcy Code;

20. To hear and act on any other matter not inconsistent with the Bankruptcy Code;

21. To consider and act on the compromise and settlement of any litigation, Claim against or Cause of Action on behalf of the Estate; and

22.     To interpret and enforce the injunctions contained in the Confirmation Order.

Dated: Wappingers Falls, New York
December 23, 2024

                                                  JOHNSTON & RHODES BLUESTONE CO.

                                By:   /s/ Peter Becker Johnston
                                             PETER BECKER JOHNSTON, President

                                             GENOVA, MALIN & TRIER, LLP
                                           Attorneys for Debtor
                                           1136 Route 9
                                           Wappingers Falls, NY  12590
                                           (845) 298-1600

                              By:   /s/ Michelle L. Trier
                                             MICHELLE L. TRIER, ESQ.